UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LESLIE C. LOVE,<br><br>               Plaintiff,<br><br>   v.<br><br>MICHAEL ASTRUE, Commissioner of<br>Social Security Administration,<br><br>               Defendant. | CASE NO.   C06-5670RBL<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for August 17, 2007 |

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed, and after reviewing the record, the undersigned recommends that the Court remand the Administration's decision for further consideration.

FACTUAL AND PROCEDURAL BACKGROUND

     Plaintiff, Leslie Love, was born in 1958 (he is currently 49 years old). He obtained a high school diploma, but has had no vocational training (Tr.202). Plaintiff was employed at Fred Meyer for approximately seven years (Tr.204-205). He began working at Fred Meyer as a Section Head in charge of stationary, cards, and gift items. He worked his way up to the position of Home Improvement Manager where he supervised the Section Heads in such home improvement areas as paint, wood, hardware, and electrical (Tr.203). His tasks included scheduling staff, participation in applicant interviews (although he did not make the final decision to make any offers to hire employees). Plaintiff states his employment at

Fred Meyer was terminated due to his health; he was having difficulty with chest pains, diabetes, and had been hospitalized four times during his last year of employment (Tr. 205). Prior to his Fred Meyer employment plaintiff worked in construction for approximately nine years, working his way up from ditch digger to superintendent (Tr.206).

In November of 2003, Plaintiff began treatment with Dr. Shane Dunaway. The initial treatment notes of November 28, 2003, show a history of diabetes, neuropathy, hypertension, and Gastroesophageal Reflux Disease ("GERD"). Throughout his treatment for diabetes and neuropathy with Dr. Dunaway (November 2003 – January 2006) there is a consistent theme of numbness, pain, and weight gain; failure to be fully compliant with all treatment recommendations due to lack of insurance; and unemployment (Tr. 160-177). Because plaintiff had recently lost his health insurance Dr. Dunaway set him up with a patient medical assistance program, and was concerned about difficulties with obtaining prescription medication, because without it his neuropathy caused him to experience increased pain (Tr.165).

Plaintiff was seen by an Internist, Dr. Donald Ramsthel, in Lake Oswego, Oregon on March 20, 2004. Dr. Ramsthel assessed and diagnosed plaintiff with (1) diabetes mellitus, Type 2, poorly controlled with some neuropathy; (2) Hypertension, poorly controlled; and (3) obesity. Dr. Ramsthel agreed with plaintiff's assessment that he could stand and walk for 25 minutes at a time, requiring 10 minute rest intervals with a limitation of four hours total standing time in an eight hour day (Tr.155).

On November 7, 2003, Plaintiff filed an application for Title XVI Supplemental Security Income benefits and on December 3, 2003, he filed a Title II application for Disability Insurance Benefits with the Social Security Administration. He alleged disability since August 5, 2003 (Tr.19-20, 49-51), although he points out that he stopped working in June 2000 due to health problems and has not worked since that time (Tr.205). The applications were denied initially and on reconsideration (Tr.24-27, 31-32). Plaintiff filed a request for hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on May 17, 2006 (Tr.197-218).

On June 30, 2006, the ALJ issued a written decision, finding Mr. Love not disabled (Tr. 9-18). The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. 404.1520, 416.920. A summary of the ALJ's evaluation follows:

> ***Step one***. The ALJ found that plaintiff had not engaged in substantial gainful activity at any time since his alleged disability onset date (Tr.13).

***Step two***.  The ALJ found that plaintiff suffered from severe impairments, i.e. diabetes mellitus, neuropathy in his hands and feet, obesity, and a history of kidney-stones and hypertension (Tr.13-14).

***Step three***.  The ALJ found that the impairments did not singularly or in combination meet or equal any of the Listings (Tr.14).

***Step four***.  The ALJ found that plaintiff has a residual functional capacity to perform work related activities involving a modified medium exertion level; that he is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; that he is able to sit for six hours, and stand and/or walk for no more than two hours in an eight hour workday; that he requires a sit/stand option to be executed at will; that he should only engage in occasional climbing and balancing; that he should not be exposed to hazardous environments, including moving equipment, machinery or unprotected heights; and any extreme heat or cold.  Further the ALJ found that the plaintiff is unable to perform any past relevant work. (Tr.15-16).

***Step five***.  The ALJ found that jobs exist in the national economy which plaintiff could perform, setting forth as an example the job of surveillance system monitor (Tr.17).  Accordingly the ALJ found the plaintiff not disabled through the date of the decision (Tr. 18).

Plaintiff requested review of the ALJ's decision by the administration's Appeals Council, but was denied on September 29, 2006 (Tr. 5-8), and thus, the ALJ's decision is the final administrative decision. On November 16, 2006, Plaintiff filed the instant Complaint with the Court, seeking judicial review of the ALJ's denial of his applications for social security benefits.  Plaintiff specifically claims the ALJ erred by (a) failing to give appropriate weight to the opinion of his treating and examining physicians; (b) failing to properly consider his testimony regarding his symptoms and limitations; (c) finding that his impairments did not meet or equal a Listed impairment; and (d) improperly determining his residual functional capacity ("RFC").

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

REPORT AND RECOMMENDATION
Page - 3

If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Dunaway and Dr. Ramsthel (Plaintiff's Opening Brief at 10-11). Considering Plaintiff's RFC, the ALJ specifically wrote, "I considered the medical opinions of the claimant's treating physicians Shane Dunaway, M.D., and Edgard Vera, M.D. In addition, I reviewed the results of a consultative physical examination performed by Donald D. Ramshtel, M.D. I also relied on the opinions of State Agency doctors Ramon Valdes, S.D.M. and Robert G. Hoskins, M.D" (Tr. 15). The ALJ ultimately concluded that Mr. Love was capable of performing work in the national economy, as noted above.

The ALJ specifically noted that Plaintiff's treating physicians had not identified any functional limitations (Tr. 16), and he relied on the opinion of Dr. Valdes to support his evaluation of Plaintiff's RFC. The ALJ wrote:

> The exertional limitations identified in the above-described residual functional capacity are supported by the medical opinion of State Agency doctor, Ramon Valdes, S.D.M. On April 16, 2004, Dr. Valdes reviewed the claimant's treatment record and opined that he was capable of performing work-related activities in conjunction with the above-described residual functional capacity. (Exhibit 1F).
>
> The results of Dr. Valdes' evaluation are consistent with a consultative physical examination performed on March 20, 2004, by Donald D. Ramsthel, M.D. Dr. Ramsthel diagnosed the claimant with diabetes mellitus (Type II), neuropathy secondary to diabetes, and obesity. During this examination, the claimant advised Dr. Ramsthel that he is able to walk and/or stand for four hours during an eight hour workday. In addition, he described his ability to sit as unlimited, and indicated he is able to lift and/or carry 75 pounds occasionally and 25 pounds frequently. (Exhibit 5F/59).

(Tr. 16).

Clearly, the ALJ did not ignore the medical opinions of Dr. Dunaway or Dr. Ramsthel as suggested by Plaintiff. However, the court finds the ALJ's interpretation of the medical evidence is not properly reflected in the record. For instance, the ALJ's stated the Plaintiff reported that he was able to stand and/or walk for a period of 4 hours during the workday, but the specific finding by Dr. Ramsthel is more restrictive. Dr. Ramsthel's report states, "[Plaintiff] indicates, and probably is right, that the number of hours standing and walking would be about 20-25 minutes with a rest period of 10 minutes before resuming gain, resulting in about 4 hours of time in an 8-hour day" (Tr. 155). The ALJ did not account for the time Plaintiff needs to rest in his evaluation of the medical evidence and Plaintiff's RFC. Similarly, the ALJ fails to acknowledge Dr. Dunaway's notes indicating that Mr. Love's neuropathy causes significant amount of pain, numbness, and tingling in his lower legs and feet (Tr. 165). The ALJ's review and evaluation of the medical evidence does not accurately account for these symptoms and any associated limitations. Based on the foregoing, the ALJ failed to properly evaluate the medical evidence and failed to provide substantial evidence to support the RFC finding in this case.

Having concluded that the ALJ improperly evaluated the medical evidence and Plaintiff's RFC, the undersigned also finds the ALJ failed to properly consider Plaintiff's testimony or credibility regarding the severity of his limitations. The ALJ discredited Plaintiff's testimony based solely on the ALJ's evaluation of some of Plaintiff's activities, such as housework and supervising a Sunday school class; however, the ALJ fails to explain how these activities would relate or carry over to a work place setting or the demands of the jobs identified by the vocational expert. Moreover, when the medical evidence is reviewed, limitations not previously found would be expected to affect the administration's findings regarding plaintiff's testimony and credibility. Accordingly, the Court should conclude that the ALJ's errors require further consideration of Plaintiff's testimony and credibility.

Finally, Plaintiff asks the court to exercise its discretion to remand the matter, reversing the administrative decision, and awarding benefits. Plaintiff's argument relies heavily on the assertion that the court should credit as true the medical opinions of Dr. Dunaway and his subjective pain allegations. The following test is used to determine when evidence should be credited and an immediate award of benefits directed: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it

REPORT AND RECOMMENDATION
Page - 5

is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.2000)(*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996).

In Harman the social security claimant argued the ALJ improperly rejected medical testimony and the district court was obligated to credit the opinion as true. The Ninth Circuit rejected the argument, stating:

> Appellant supports his argument that Dr. Fox's testimony should be credited by citation to *Lester v. Chater*, 81 F.3d 821 (9th Cir.1995) and *Smolen v. Chater*, 80 F.3d 1273 (9th Cir.1996). In *Lester*, we wrote that "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d. at 834, *quoting Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.1989). We built upon this rule in *Smolen* by positing the following test for determining when evidence should be credited and an immediate award of benefits directed:
>> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.
>
> *Smolen*, 80 F.3d at 1292. [Footnote omitted]
>
> The Commissioner attacks Appellant's reliance on *Lester* by arguing that the record in that case contained no evidence capable of supporting the rejection of the medical opinions, while here, according to the Commissioner, there is such evidence. [Footnote omitted] However, even assuming arguendo that there is material in the record upon which the ALJ legitimately could have rejected Dr. Fox's testimony, the Commissioner's attempt to distinguish *Lester* is not well founded. In *Varney v. Secretary of Health and Human Services (Varney II)*, 859 F.2d 1396 (9th Cir.1988), this court addressed the propriety of adopting the Eleventh Circuit's practice of accepting a claimant's pain testimony as true when it is inadequately rejected by the ALJ. In language which is equally applicable here, we stated:
>> Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence.... [¶ And] the rule [of crediting such testimony] ensures that deserving claimants will receive benefits as soon as possible....
>>
>> .. Certainly there may exist valid grounds on which to discredit a claimant's pain testimony.... But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.
>
> *Id.* at 1398-99. (Emphasis added; internal quotes and citation omitted).
>
> Our reliance on *Varney II* to justify the current application of *Smolen* does not obscure the more general rule that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings. *See Lewin v. Schweiker*, 654

F.2d 631, 635 (9th Cir.1981). Rather, the *Smolen* test still enables only a limited exception to the general rule.

> We conclude that if the Smolen test is satisfied with respect to Dr. Fox's testimony, then remand for determination and payment of benefits is warranted regardless of whether the ALJ *might* have articulated a justification for rejecting Dr. Fox's opinion.
>
> *B. Applying the Test*
>
> Not surprisingly, the parties disagree as to whether the Smolen test is met here. Specifically, they disagree as to whether crediting Dr. Fox's opinion mandates a finding of disability. [Footnote omitted]  We conclude that it does not.

Harman, 211 F.3d at 1178-79 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000).

The Harman court found the Smolen test did not apply after reviewing the need for remand and whether benefits could be awarded as a matter of law. Because additional materials on remand needed to be considered, because the medical opinion that Appellant is totally disabled is a medical rather than a legal conclusion and because there was no testimony from the vocational expert that the limitations found would render the claimant unable to engage in any work the Harman court did not apply the Smolen test to credit the medical opinion as true. The matter was remanded without conditions directing the administration to credit the improperly rejected medical opinion as true.

In the case at hand the undersigned finds remand with a directive to the administration to credit the medical opinions, or the statements and testimony, as true inappropriate. Here, remand is necessary to allow the administration the opportunity to properly review the record and cure the mistakes the ALJ made in his decision. The record is incomplete. The administration should be given the opportunity to reconsider the evidence and apply the five-steps of the evaluation process to determine if Mr. Love is disabled.

## CONCLUSION

Based on the foregoing discussion, the Court should remand the Administration's final decision, which denied plaintiff's applications for social security disability benefits, for further consideration. When the administration reconsiders this matter a different ALJ should review all the medical evidence, plaintiff's

testimony, and expert opinions to complete steps two through five of the evaluation process.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 22, 2003**, as noted in the caption.

DATED this 26th day of July, 2007.

                                    */s/ J. Kelley Arnold*
                                    J. Kelley Arnold
                                    U.S. Magistrate Judge